UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 23-10808-RGS

IN RE CORREA

MARIO LELLAS CORREA

v.

McCALLA RAYMER LEIBERT PIERCE LLC, SELECT PORTFOLIO SERVICING INC., and WELLS FARGO BANK N.A.

MEMORANDUM AND ORDER ON APPEAL FROM
THE BANKRUPTCY COURT'S DISMISSAL OF
PLAINTIFF'S ADVERSARY COMPLAINT

November 13, 2023

STEARNS, D.J.

This appeal arises from the foreclosure of Mario Correa's home and rental property located at 102-104 Lancaster Street (Property) in January of 2019. Correa argues that the Bankruptcy Court for the District of Massachusetts (Bankruptcy Court) erroneously dismissed his Third Amended Complaint (TAC) seeking relief from the foreclosure. For the reasons that follow, the court will affirm the Bankruptcy Court.

## BACKGROUND

The protracted history of this litigation dates back to 2009, when Wells Fargo Bank N.A., as Trustee for the Harbor View Mortgage Loan Pass-

Through Certificates, Series 2007-1 (Wells Fargo), first sought to foreclose on the Property. Appellant's App. (Correa App.) (Dkt. # 23) at 104. The Massachusetts Land Court granted the foreclosure petition on June 11, 2009; Correa appealed. *Id.* at 119. While the appeal was pending, on June 8, 2011, Correa filed for relief under Chapter 13 of the Bankruptcy Code, triggering an automatic stay that prevented Wells Fargo from proceeding with the foreclosure. Appellant's Br. (Correa Br.) (Dkt. # 21) at 8; 11 U.S.C. § 362. On appeal, the Quincy District Court overturned the Land Court's foreclosure order in February of 2012, finding that Wells Fargo had failed to strictly comply with the foreclosure notice requirements. Correa App. at 119, 128-129.

Although the foreclosure order was reversed, Wells Fargo remained the record owner of the Property. On June 27, 2013, Correa filed an adversary complaint in his Chapter 13 proceeding seeking to transfer title of the real estate from Wells Fargo to himself (2013 Complaint). *Id.* at 6. Correa and Wells Fargo mediated the 2013 Complaint; the mediation concluded in March of 2015. *Id.* at 157.

In the course of the mediation, the parties (including Correa) discussed the terms of a proposed settlement, and Correa's attorney accepted the settlement on his behalf. *Id.* at 176. The parties then jointly filed a motion

2

to extend pre-trial deadlines, which stated that "the parties following mediation have reached agreement on all material terms to settle and resolve the remaining claims in the Adversary Proceeding, in their entirety." *Id.* Correa subsequently refused to sign the Settlement Agreement and Release of Claims (Settlement Agreement), asserting that he did not agree to the terms of the settlement. *Id.* at 176-178. Wells Fargo consequently brought an action to enforce the Settlement Agreement. *Id.* After holding an evidentiary hearing, the Bankruptcy Court determined that Correa had voluntarily assented to the Settlement Agreement and allowed Wells Fargo's motion to enforce in November of 2015. *Id.* at 270-273.

The Settlement Agreement contained a broad release, discharging Wells Fargo and its loan servicer Select Portfolio Servicing, Inc. (SPS)

> from any and all state or federal claims, demands or causes of action asserted, existing or claimed against either or both by reason of, arising from, or related to the Note, Mortgage, Assignment, Property, Adversary Proceeding, and/or Dispute which may exist from the beginning of time to the date of this Agreement.

*Id.* at 560. In consideration for the release, Wells Fargo agreed to a loan modification, which provided that some $140,000 of the unpaid principal balance would be forgiven, $170,000 of the principal balance would be deferred as an interest-free balloon payment, and the remaining $390,000 would be paid over 22 years at an annual interest rate of 3.5% (Loan

3

Modification Agreement). *Id.* at 425-426. The Loan Modification Agreement was appended to the Settlement Agreement. The Loan Modification Agreement required Correa to make monthly payments to SPS beginning on May 1, 2015. *Id.* at 426.

Correa alleges that during the pendency of the mediation and prior to the Bankruptcy Court's approval of the Settlement Agreement, SPS sent Correa notices of default on five occasions in 2015 (January 8, May 8, May 15, May 18, and October 30).[1] *Id.* at 13. Wells Fargo moved for approval of the Settlement Agreement on December 4, 2015. *Id.* at 9. Wells Fargo's motion attached a modified version of the Loan Modification Agreement (Modified Loan Agreement), which corrected a typographical error in the computation of the principal balance and made additional insignificant alterations to the Agreement.[2] *Id.* at 10. The Modified Loan Agreement

---

[1] Most of these communications were not notices of default. Correa's Appendix includes communications from SPS dated January 8 and May 15 that relate to an assistance review application. *Id.* at 25-26. His Appendix also includes a May 8 letter from SPS that is a notice of default, so the court is satisfied that at least one of these communications constituted a notice of default.

[2] Specifically, the Modified Loan Agreement: (1) changed the interest rate from 3.5% to 3.625% because the lowest available interest rate had changed to 3.625%; (2) reduced the interest bearing principal by about $30,000 to maintain the monthly principal and interest payment amounts; (3) increased the monthly payment by $30 to cover taxes and insurance; (4) reduced the final balloon payment on the interest bearing principal;

required Correa to make his first payment on January 1, 2016.  *Id.* at 289.  Correa did not oppose the motion for approval.  *Id.* at 275.  The Bankruptcy Court approved the Settlement Agreement — including the Modified Loan Agreement — on December 29, 2015, and dismissed all remaining counts of the 2013 Complaint on January 29, 2016.  *Id.*  Correa did not appeal the approval.  *Id.*

On May 2, 2016, Wells Fargo requested relief from the automatic stay and an order permitting it to "pursue any and all interests" it may have in the Property, stating that Correa had "failed to make any payments whatsoever under the [Modified Loan Agreement], has defaulted, and is now six (6) months in arrears."  *Id.* at 314, 316.  In opposition, Correa argued that the Modified Loan Agreement was invalid because he had not agreed to its terms and thus was not obligated to make any payments under it.  *Id.* at 577.  The Bankruptcy Court disagreed and granted Wells Fargo relief from the automatic stay on June 30, 2016, noting that it "has already approved the modified loan agreement and has already ruled, after an evidentiary hearing, that [Correa] entered into said agreement voluntarily."  *Id.* at 577.  Wells

---

(5) increased the deferred principal balance; and (6) changed the first payment date to January 1, 2016.  *Id.* at 10-11.

5

Fargo foreclosed on the Property on January 25, 2019, and sold it to a third party on May 25, 2021. *Id.* at 580, 583-584.

Correa then filed the instant adversary action in June of 2022 against Wells Fargo, SPS, McCalla Raymer Leibert Pierce LLC (MRLP), and Huu Le.[3] Wells Fargo/SPS Br. at 2; Correa App. at 3-4. He has since amended his Complaint three times, filing the operative TAC on November 8, 2022. Correa Br. at 8. Wells Fargo, SPS, and MRLP moved to dismiss all counts of the TAC. The Bankruptcy Court allowed the motions in full on March 30, 2023.

Correa appealed the dismissal of seventeen counts of the TAC: violations of various provisions of the Massachusetts foreclosure statutes, Mass. Gen. Laws ch. 183 § 21; *id.* ch. 244 §§ 17B, 35A, 35B (Counts I, II, and IV), and the Massachusetts Unfair Business Practices law, Mass. Gen. Laws ch. 93A (Counts III and XIX); breach of contract and implied warranties (Counts V-VII); violation of the federal Truth in Lending Act, 15 U.S.C. § 1601 (Count VIII); trespass, fraud, and slander of title (Counts X-XII); willful violation of the automatic stay (Count XIII); and failure to comply with Bankruptcy Rule 3002.1 (Count XVIII). Correa also appeals his requests for

---

[3] Le purchased Correa's foreclosed Property from Wells Fargo. Le did not move to dismiss the TAC and is not a party to this appeal.

6

relief pursuant to the avoidance of transfer, preservation of avoided transfers, and turnover of property of the bankruptcy estate provisions of the Bankruptcy Code, 11 U.S.C. §§ 522, 542(a), 544, 551. (Counts XIV, XVI, and XVII).

## DISCUSSION

In reviewing a bankruptcy court's decision to dismiss a complaint, the traditional Rule 12 standards apply, and the court "review[s] the bankruptcy's court's dismissal of the complaint de novo, accepting all well-pleaded facts as true and drawing all reasonable inferences in the pleader's favor." *In re Curran*, 855 F.3d 19, 24-25 (1st Cir. 2017). To survive a motion to dismiss, the complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Exhibits attached to the complaint are properly considered part of the pleadings 'for all purposes,' including Rule 12(b)(6)." *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008), quoting Fed. R. Civ. P. 10(c). Further, where "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), . . . the trial court can review it in

deciding a motion to dismiss." *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998).

**Counts I and II: Deficiencies with Notices of Default, Right to Cure, and Foreclosure**

Count I relates to the notices of default and right to cure. Section 35A of the Massachusetts foreclosure statute provides a "90-day right to cure a default of a required payment as provided in [a] residential mortgage" before the mortgagee may accelerate payment of an unpaid balance. Mass. Gen. Laws. ch. 244 § 35A(a). The 90-day period is triggered when the notice is delivered by hand to the mortgagor or when notice is "sent by first class mail and certified mail or similar service . . . to the mortgagor at the mortgagor's address last known to the mortgagee." *Id.* § 35A(b).

Massachusetts requires "strict compliance 'with the terms of the actual power of sale in the mortgage [and] with any conditions precedent to the exercise of the power that the mortgage might contain.'" *Thompson v. JPMorgan Chase Bank, N.A.*, 486 Mass. 286, 292 (2020), quoting *Pinti v. Emigrant Mortg. Co.*, 472 Mass. 226, 233-234 (2015) (alteration in original). However, §§ 35A and 35B are not "statutes 'relating to the foreclosure of mortgages by the exercise of a power of sale,'" and thus do not require strict compliance. *U.S. Bank Nat'l Ass'n v. Schumacher*, 467 Mass. 421, 431 (2014), quoting Mass. Gen. Laws ch. 183, § 21. Instead, to properly plead a

8

violation of §§ 35A and 35B, Correa must allege that the violations were "so fundamentally unfair that [he] is entitled to affirmative equitable relief, specifically the setting aside of the foreclosure sale." *Id.*, quoting *Bank of Am., N.A. v. Rosa*, 466 Mass. 613, 624 (2013) (Gants, J., concurring).

Correa's TAC alleges two reasons that the notices of default and right to cure were defective: (1) the 90-day right to cure notice (90-Day Notice) did not inform Correa that he could challenge the default in court; and (2) Wells Fargo and SPS sent two "confusing and contradictory" notices of default on July 6 and July 25, 2016.[4] Correa App. at 32. Both arguments fail to plausibly state a viable claim for relief.

The 90-Day Notice, sent on July 6, 2016, is titled "90-Day Right to Cure Your Mortgage Default," and it informs Correa that he "did not make [his] monthly loan payment(s) due on 01/01/2016, 02/01/2016, 03/01/2016, 04/01/2016, 05/01/2016, 06/01/2016, [and] 07/01/2016 to SPS." *Id.* at 435. It states that Correa must pay the past due amount by October 4, 2016, and that if he failed to pay, he "may be evicted from [his]

---

[4] On appeal, Correa also argues that Wells Fargo and SPS violated §§ 35A and 35B because they failed to "properly and timely implement the . . . court imposed loan modification taking into consideration the improper implementation was used as a timeline to unfairly declare Plaintiff in mortgage payment default." Correa Br. at 18. He did not plead this barely intelligible theory in the TAC, so it is not properly before the court.

9

home after a foreclosure sale." *Id.* at 436. The 90-Day Notice was accompanied by a letter that "provide[d] additional information" and was "intended to complement" the 90-Day Notice. *Id.* at 437. The letter noted that "in the event of any conflict between the terms of this letter and those contained in the 90-Day Notice, the terms of the 90-Day Notice will control." *Id.* The July 6 letter informed Correa that he had "the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and sale." *Id.*

Correa contends that because the 90-Day Notice did not state that he could challenge the default and because the language of the 90-Day Notice "was deemed to control in the event of a conflict," the notice was defective. *Id.* at 32. But there is no conflict between the 90-Day Notice and the accompanying letter; the 90-Day Notice is silent regarding Correa's right to challenge the default in court. The 90-Day Notice thus cannot form a basis for Correa's §§ 35A and 35B claim.

SPS sent a subsequent notice of default on July 25, 2016. This letter informed Correa that he had until August 24, 2016, to pay the outstanding balance and cure the default. Correa claims that the July 25 notice of default contradicted the 90-Day Notice because the notice of default stated that the cure date was August 24, but the 90-Day Notice stated that the cure date was

October 4. *Id.* at 32. This does not amount to an actionable violation of § 35A. *See Thompson*, 486 Mass. at 294 (Section 35A's "more generous reinstatement time period" always provides 90 days to cure a default, and statements of shorter reinstatement periods are not "potentially deceptive" if the mortgagee is told elsewhere he has 90 days to cure).

Count II alleges that the foreclosure notice was sent 28 days before the foreclosure sale in violation of Mass. Gen. Laws ch. 244 § 17B. Correa App. at 31-35. Section 17B governs actions for deficiencies after a foreclosure sale and requires a notice be mailed within 21 days after the foreclosure sale. Mass. Gen. Laws ch. 244 § 17B. Correa's allegations all relate to pre-foreclosure conduct, so he fails to state a § 17B claim.[5]

**Counts III-VIII, X-XII: Validity of the Modified Loan Agreement**

Correa concedes that he made no payments toward his mortgage after the Bankruptcy Court approved the Settlement Agreement. The TAC instead alleges that Correa is not subject to the Modified Loan Agreement's terms because he did not agree to it, ostensibly because he claims that "it is

---

[5] At the hearing on defendants' motion to dismiss in the Bankruptcy Court, Correa suggested that he could amend the TAC to include Mass. Gen. Laws ch. 244 § 14, in Count II. *See* Correa App. at 777; Correa Br. at 20. Even with Correa's proposed amendments, the TAC does not successfully allege a § 14 violation. The TAC alleges that the foreclosure notice was sent 28 days before the foreclosure sale, but § 14 only requires the notice "to be mailed by registered mail at least 14 days prior to the date of sale." Mass. Gen. Laws ch. 277 § 14.

11

reasonable to believe" that he did not realize the Modified Loan Agreement differed from the Loan Modification Agreement. Correa App. at 11. Counts III-XII allege various theories of liability, but they stem from the same argument: Correa did not default on the terms of the Loan Modification Agreement because that Agreement was "never implemented by Defendants Wells Fargo and SPS," and he did not default on the terms of the Modified Loan Agreement because "those terms and conditions were not the ones approved by this Court on December 29, 2015," but were instead "unilateral[] . . . terms and conditions contravening the bargained for contractual expectations pursuant to the [Settlement Agreement]." *E.g.*, *id.* at 38-39. Accordingly, Correa claims that Wells Fargo and SPS's actions in notifying him that he had defaulted on his mortgage, foreclosing on his Property, and selling it to a third party were unlawful.

The judgment approving the settlement of the 2013 Complaint and dismissing Correa's remaining claims is a final judgment on the merits, which Correa neither opposed nor appealed. *See Petitioning Creditors of Melon Produce, Inc. v. Braunstein*, 112 F.3d 1232, 1240 (1st Cir. 1997). Correa's "failure to appeal thereafter is fatal" to his claims that the Modified Loan Agreement does not apply to him. *See id.* He is precluded from now

objecting to the Modified Loan Agreement. *See Foretich v. Landsburg Co.*, 2 F. App'x 45, 45-46 (1st Cir. 2001).

Correa argues that claim preclusion is inapplicable here because his claims do not share a common nucleus of operative fact with those in his 2013 Complaint as this action seeks relief for conduct that occurred after the dismissal of the 2013 Complaint. Correa Br. at 15-17. This argument misinterprets the preclusive effect of the judgment. The plausibility of Correa's claims that Wells Fargo's and SPS's post-judgment conduct was unlawful depends entirely on whether he was subject to the Modified Loan Agreement. Although he did not raise them, his objections to the validity of the Modified Loan Agreement "could have been raised and decided in [the] prior action." *See Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020). The time for his objections to the Modified Loan Agreement has come and passed. The court sees "no basis for allowing him to relitigate those objections here." *Foretich*, 2 F. App'x at 46.

**Counts XIII: Violation of the Automatic Stay**

Count XIII alleges willful violations of the automatic stay that was in place from June 8, 2011 to June 30, 2016. Correa claims that he "received more than sixty-six (66) requests for payment" from Wells Fargo and SPS "while in bankruptcy while the automatic stay was in full force and effect."

13

Correa App. at 50. When he settled the 2013 Complaint, Correa released Wells Fargo and SPS from "any and all state or federal claims, demands or causes of action asserted, existing or claimed against either or both by reason of, arising from, or related to the Note, Mortgage, Assignment, Property, Adversary Proceeding, and/or Dispute" that existed as of the date of the Settlement Agreement. *Id.* at 283. The alleged violations of the stay all predate the Settlement Agreement. They thus fall within the scope of the release, so Correa fails to state a plausible claim. *See Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 34 (1st Cir 2001) (consideration of a settlement agreement is proper on a motion to dismiss where defendant's "liability under the complaint depends directly upon whether [plaintiff's] claims are interpreted to have been released").

**Counts XIV, XVI, and XVII: Transfer Avoidance**

Counts XIV, XVI, and XVII seek to avoid the transfer of the Property to Le. Correa claims that Le's deed is invalid because Wells Fargo's foreclosure of the Property was invalid, so Wells Fargo had no interest in the Property to transfer to Le. Correa concedes that his transfer avoidance claims are "contingent on the counts related to the wrongful foreclosure," Counts IV-VII. Correa App. at 762. As the court has already affirmed the

dismissal of Counts IV-VII for failing to state a claim, it will affirm the dismissal of Counts XIV, XVI, and XVII.

**Cont XVIII: Violation of Bankruptcy Rule 3002.1**

Bankruptcy Rule 3002.1 requires, *inter alia*, that during the pendency of a Chapter 13 claim,

> [t]he holder of [a] claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice of any change in the payment amount, including any change that results from an interest rate . . . adjustment, no later than 21 days before a payment in the new amount is due.

Bankr. R. 3002.1(b). The TAC alleges that Wells Fargo and SPS increased the interest rate on Correa's Modified Loan Agreement several times but "failed to file the required notices." Correa App. at 58. Elsewhere in the TAC, Correa alleges that he received at least 22 notices of interest change. *Id.* at 50-51. It is unclear to the court, based on the extremely thin allegations in the TAC, what additional notices Correa claims Rule 3002.1 requires. The Rule 3002.1 claim is insufficiently pled to merit further consideration.

**Count XIX: Violation of COVID-19 Eviction Moratoriums**

Count XIX claims that Wells Fargo, SPS, and MRLP violated Chapter 93A of the Massachusetts Unfair Business Practices Act (Chapter 93A) by violating the federal and Massachusetts COVID-19 eviction moratoriums.[6]

---

[6] Count XIX also claims that defendants violated Chapter 93A by "threatening eviction when Plaintiff was wrongfully foreclosed and a

15

The federal moratorium prevented any "landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action" from "evict[ing] any covered person from any residential property in any jurisdiction to which this Order applies during the effective period." 85 Fed. Reg. 55292. A "covered person" is one who has provided their landlord or the owner of the property a declaration satisfying various requirements regarding their inability to pay their rent. *Id.* As relevant to Correa's claims, the Massachusetts moratorium prevented any "landlord or owner of a property" from sending "any notice, including a notice to quit, requesting or demanding that a tenant of a residential dwelling unit vacate the premises." 2020 Mass. Acts ch. 65.

To prevail on his Chapter 93A claim, Correa must allege "1) that the defendant . . . committed an unfair or deceptive act or practice; . . . 2) a loss of money or property suffered as a result; and (3) a causal connection between the loss suffered and the defendant's unfair or deceptive method, act, or practice." *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 469 Mass. 813, 820 (2014) (footnote omitted). "[T]he definition of an actionable 'unfair

---

violation of the Fair Debt Collection Practices Act and the Federal Trade Commission Act." Correa App. at 59. As the court has concluded that Correa failed to plausibly allege that the foreclosure was wrongful and that defendants violated the FDCPA, the TAC fails to state a Chapter 93A claim premised on these claims.

16

or deceptive act or practice'" for purposes of Chapter 93A "goes far beyond the scope of the common law action for fraud and deceit." *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 703 (1975).

Correa fails to state a Chapter 93A claim for violations of either the federal or state moratorium. As to the federal moratorium, Correa does not allege that he provided any of the defendants with the declaration required to render him a "covered person." Because he has not plausibly alleged that the regulation applied to him, the court need not determine whether the alleged conduct amounts to a violation of the federal moratorium and, if so, whether that amounts to a Chapter 93A violation.

Regarding the state moratorium, Correa does not allege that MRLP is a "landlord or owner," so MRLP's conduct cannot violate the moratorium as the state moratorium solely applies to landlords and owners.[7] As to SPS, its alleged conduct does not rise to "the level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce," nor does it have the "rancid flavor of unfairness" that Massachusetts courts require to state a Chapter 93A claim. *Baker v.*

---

[7] Correa appears to argue on appeal that MRLP was acting as SPS's agent when it violated the moratorium. *See* Correa Br. at 34. But Correa alleged no facts in the TAC that would suggest a principal/agent relationship between SPS and MRLP.

17

*Goldman, Sachs & Co.*, 771 F.3d 37, 50-51 (1st Cir. 2014), first quoting *Levings v. Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 504 (1979), and then quoting *Atkinson v. Rosenthal*, 33 Mass. App. Ct. 219, 226 (1992). Indeed, the sole allegation regarding SPS is that it "engaged Defendant MRLP to induce Mr. Correa to leave the Property after the 2021 foreclosure." Correa App. at 59. "Something more is required" to successfully allege a Chapter 93A claim. *See Juarez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 281 (1st Cir. 2013) (dismissing Chapter 93A claim in foreclosure context where plaintiff merely alleged defendant wrongfully foreclosed on her property).

## ORDER

For the foregoing reasons, the Bankruptcy Court's decision is <u>AFFIRMED</u>. Correa will have 21 (twenty-one) days from the date of this Order to show cause why costs and fees for the bringing of a frivolous appeal should not be awarded to appellees pursuant to Bankruptcy Rule 8020(a).

SO ORDERED.

/s/ Richard G. Stearns  
UNITED STATES DISTRICT JUDGE